UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------x

WESTRM-WEST RISK MARKETS, LTD.,

        Plaintiff and
        Fourth Party Defendant,

     -against-

XL REINSURANCE AMERICA, INC. and
GREENWICH INSURANCE COMPANY,

        Defendants and
        Third Party Plaintiffs,        <u>OPINION</u>

     -against-            02 Civ. 7344 (MGC)

APARTMENT INVESTMENT AND MANAGEMENT
COMPANY, SWAIN & BALDWIN INSURANCE,
INC., and RAY BALDWIN,

        Third Party Defendants.

--------------------------------------x

APPEARANCES:

     KASOWITZ, BENSON, TORRES & FRIEDMAN, LLP
     Attorneys for WestRM-West Risk Markets, Ltd.
     1633 Broadway
     New York, NY 10019

     By: Kim Conroy

     KELLEY DRYE & WARREN, LLP
     Attorneys for XL Reinsurance America, Inc.
     and Greenwich Insurance Company
     101 Park Avenue
     New York, NY 10178

     By: William Escobar
         David Zalman

Bᴀᴋᴇʀ Bᴏᴛᴛs, LLP
Attorneys for Swain & Baldwin Insurance, Inc. and Ray
Baldwin
1299 Pennsylvania Ave N.W.
Washington, DC 20004

By:   Sara Kropf
      Casey Cooper
      Stephanie Dourado

LATHAM & WATKINS, LLP
Attorneys for Apartment Investment and Management Co.
885 Third Avenue, Suite 1000
New York, NY 10022

By:   Noreen A. Kelly-Najah
      James E. Brandt

CEDARBAUM, J.

   Third-party plaintiffs XL Reinsurance America, Inc. ("XL")
and Greenwich Insurance Company ("Greenwich") move for summary
judgment on their claims for contractual indemnification against
third-party defendants Apartment Investment and Management
Company ("AIMCO"), Swain & Baldwin Insurance, Inc. ("Swain &
Baldwin"), and Ray Baldwin ("Baldwin").  Swain & Baldwin, Baldwin
(collectively "the Baldwin Defendants"), and AIMCO each move for
summary judgment on all claims asserted against them by Greenwich
and XL.  For the reasons that follow, the motion of Greenwich and
XL is denied, AIMCO's motion is denied in part and granted in
part, and the Baldwin Defendants' motion is granted.

The following facts are undisputed, except where specifically noted.

This action was originally commenced by WestRM-West Risk Markets, Ltd. ("WestRM") to enforce the obligations of Greenwich and XL under four surety bonds issued to WestRM as obligee. Greenwich and XL are insurance companies licensed to issue surety bonds. WestRM is a Swiss reinsurance company. On or about December 28, 2001, Greenwich and XL issued two bonds for $6.3 million each to National Program Services ("NPS"). NPS was an insurance agency located in New Jersey, whose principal was Vito Gruppuso. On or about January 31, 2002, Greenwich and XL issued two additional bonds with face amounts of $6.25 million each to AIMCO and NPS. AIMCO is a Maryland corporation that owns and manages residential real estate throughout the United States.

The two January 2002 bonds ("the Bonds") purport to secure the obligations of AIMCO and NPS under a January 2002 Premium Finance Agreement ("the January PFA") with WestRM. The January PFA explains that NPS procured an insurance policy from Drummonds Insurance and that the $12.5 million insurance premium on that policy was paid by WestRM on behalf of NPS as consideration for the agreement of NPS and AIMCO to repay the $12.5 million to

WestRM over the course of three years.  Greenwich and XL issued the Bonds to secure the obligations of AIMCO and NPS to repay WestRM.  By letter dated May 16, 2002, WestRM advised Greenwich and XL that AIMCO and NPS had each defaulted on their payments under the January PFA and demanded payment on the Bonds.

It is undisputed that the name Ray Baldwin is signed on the Bonds.  Ray Baldwin is a Texas-based insurance broker and President of Swain & Baldwin, a Texas insurance agency.  Although the exact nature of Baldwin's relationship to AIMCO is disputed, Baldwin's June 1996 Consulting Services Agreement with AIMCO states that Baldwin was engaged by AIMCO as an independent contractor to provide consulting services in connection with AIMCO's insurance needs.

AIMCO has proffered an expert report that concludes that Baldwin did not sign the Bonds.  Greenwich and XL have not proffered any evidence to the contrary.  Greenwich and XL instead argue that perhaps Vito Gruppuso signed Baldwin's name on the Bonds pursuant to Baldwin's authorization.  There is not, however, any evidence to support this theory.  Baldwin testified at his deposition that "no one authorized by me signed my name to [the Bonds]."  Kropf Decl. Ex. Q at 94.

The Bonds are incorporated by reference into the January PFA, on which a signature that looks like that of Ray Baldwin

also appears.  The signature is on the last page of the PFA,
signed on behalf of "Apartment Investment and Management
Company."  The parties, however, dispute whether Baldwin actually
executed the PFA.  AIMCO argues that the document was fabricated
to make it appear as though Baldwin had executed it.  AIMCO
proffers an affidavit from Baldwin stating that, although the
signature on the January PFA appears to be his, he did not
execute the PFA.  AIMCO also points out that Baldwin's undated
and unnotarized signature appears only on the final page of the
purported PFA, which contains no text from the agreement, header,
page number, or other information to indicate that the page is
actually part of the January PFA.  AIMCO further notes that this
page has been produced only in copy form with multiple fax lines
that are different from the fax lines of the other pages of the
PFA.

Summary judgment was entered for WestRM against Greenwich
and XL in April 2004, on the ground that a clause in each of the
four bonds waived all defenses to enforcement of the bonds.  See
WestRM-West Risk Markets, Ltd. v. Lumbermens Mut. Cas. Co., 314
F. Supp. 2d 229, 241 (S.D.N.Y. 2004).  Greenwich and XL now seek
indemnification for their losses on the Bonds from AIMCO and from
the Baldwin Defendants pursuant to a 2001 indemnity agreement
("the Indemnity Agreement").  Ray Baldwin's signature appears on

the Indemnity Agreement twice on the same page, once on behalf of the "Principals," "Apartment Investment and Management Company/Real Estate Investment Management LLC," and once on behalf of the "Additional Corporate Indemnitor," "Apartment Investment and Management Company."

The language of indemnity in the Agreement is as follows:

Undersigned agree to indemnify and exonerate Surety from liability and to pay to Surety upon demand all losses, costs and expenses, including reasonable attorney's fees, paid or incurred in good faith by Surety, by reason of having Executed any Bond and/or enforcing this Agreement.  Surety shall have the right and sole discretion to determine whether a claim or liability involving any Bond shall be settled, compromised, paid, defended, prosecuted or appealed, and/or take any action it may deem necessary or expedient with respect to such claims.  In the event of any payment by Surety, Surety shall be entitled to be indemnified by Undersigned for all disbursements made by Surety in good faith under the belief that it was liable or that it was necessary or expedient to make such payment, whether or not liability, necessity or expediency exists.  An itemized statement of loss and expense incurred and paid by Surety, sworn to by an officer of Surety, shall be prima facie evidence of the fact and amount of the liability of Undersigned to Surety.  Separate suits may be brought under this Agreement as causes of action accrue, and the pendency or termination of any such suit shall not bar subsequent action by Surety.

Escobar Decl. Ex. 13.  "Bonds" are defined in the Agreement as "[a]ny surety bond, undertaking, guaranty or other contractual obligation undertaken by Surety on behalf of or at the request of Principal before or after the date of this Agreement, and any renewal or extension thereof."  Id.

6

The parties dispute whether Baldwin had the authority to execute this Indemnity Agreement on behalf of AIMCO. AIMCO argues that Baldwin was not authorized to execute it and proffers the testimony of AIMCO officer Thomas Toomey, who states that he did not authorize Baldwin to enter into the Indemnity Agreement and that he did not intend his November 2, 2000 letter of authorization to authorize Baldwin to do so. Greenwich and XL argue that Baldwin was authorized to execute the Indemnity Agreement and proffer three separate documents that purport to authorize Baldwin to "negotiate, purchase and finance the insurance programs for AIMCO," or "to negotiate and execute insurance premium finance" agreements for AIMCO. A November 2, 2000 letter from Thomas Toomey states that Baldwin "is authorized to negotiate and execute premium finance contracts and insurance premium/surety contracts on behalf of Apartment Investment and Management Company." Escobar Decl. Ex. 12.

## DISCUSSION

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). A genuine issue of

material fact exists when the evidence is "such that a reasonable jury could return a verdict for the nonmoving party."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  In deciding whether a genuine issue of fact exists, the court must "examine the evidence in the light most favorable to the party opposing the motion, and resolve ambiguities and draw reasonable inferences against the moving party."  In re Chateaugay Corp., 10 F.3d 944, 957 (2d Cir. 1993).  The moving party bears the initial burden of informing the court of the basis for its motion and identifying the matter that it believes demonstrates the absence of a genuine issue of material fact.  Celotex, 477 U.S. at 323. Summary judgment is appropriate if the nonmoving party fails "to make a sufficient showing on an essential element of [its] case with respect to which [it] has the burden of proof."  Id.

### I. Claim for Indemnification Against AIMCO

Both sides move for summary judgment on the claim of Greenwich and XL against AIMCO for contractual indemnification as set forth in Count IX of the Second Amended Complaint.  Greenwich and XL argue that AIMCO is liable under the Indemnity Agreement, signed by Baldwin on behalf of AIMCO, for all losses that Greenwich and XL incurred as a result of issuing the Bonds.[1]

---

[1] Greenwich and XL now argue, for the first time in this action, that the Indemnity Agreement requires AIMCO to indemnify it for all losses arising from any bonds issued by Greenwich and XL on behalf of AIMCO, or Real Estate Risk Management, or their affiliates.  Greenwich and XL contend that NPS is an

8

AIMCO responds that the Bonds are void *ab initio* because Baldwin's signature on the Bonds was forged and argues that void bonds are not "Bonds" within the meaning of the Indemnity Agreement.

Summary judgment, however, cannot be granted for either side because a genuine issue of disputed fact exists as to whether the Bonds are covered by the Indemnity Agreement. The Agreement states that the Principals "agree to indemnify and exonerate Surety from liability and to pay to Surety upon demand all losses, costs and expenses, including reasonable attorney's fees, paid or incurred in good faith by Surety, by reason of having Executed any Bond and/or enforcing this Agreement." "Bond" is defined in the Agreement as "any surety bond, undertaking, guaranty or other contractual obligation undertaken by Surety <u>on behalf of or at the request of Principal</u> before or after the date of this Agreement, and any renewal or extension thereof." Escobar Decl. Ex. 13 (emphasis added). The threshold question

_____

affiliate of Real Estate Risk Management and that AIMCO is therefore obligated to indemnify Greenwich and XL for their losses on the two bonds issued in December 2001 to NPS as the sole principal. However, the indemnification claim of Greenwich and XL against AIMCO in their Second Amended Complaint refers to only the two "AIMCO/NPS Bonds" (i.e., "the Bonds") and the "January PFA" that was secured by the Bonds. Complaint ¶¶ 259-260. There is no reference to the two NPS bonds or to the December PFA that these bonds secured. Greenwich and XL may not now amend their contractual indemnification claim against AIMCO as part of their motion for summary judgment. All of the arguments of Greenwich and XL relating to AIMCO's liability on the two December 2001 NPS bonds are disregarded as outside the scope of their indemnification claim.

is, therefore, whether the Bonds were issued by Greenwich and XL "on behalf of or at the request of" AIMCO.

Greenwich and XL proffer the January PFA, which incorporates the Bonds by reference, as evidence that the Bonds were issued "at the request of" and "on behalf of" AIMCO. Greenwich and XL argue that the signature of Ray Baldwin, AIMCO's alleged agent, on the PFA shows that AIMCO requested the issuance of the Bonds. In addition, Greenwich and XL contend that the terms of the PFA show that the issuance of the Bonds was "on behalf of" or "in the interest of" AIMCO. Greenwich and XL note that, according to the terms of the PFA, AIMCO would have been forced to pay WestRM the full amount of the remaining payments due under the PFA if Greenwich and XL had not issued the Bonds that obligated Greenwich and XL to pay WestRM if AIMCO defaulted. Thus, the Bonds served AIMCO's "interests" by protecting AIMCO from direct liability to WestRM.

Greenwich and XL also proffer evidence that AIMCO received money from Vito Gruppuso following the completion of the WestRM transaction as proof that the issuance of the Bonds was "on behalf of" or "in the interest of" AIMCO. Greenwich and XL argue that AIMCO would not have received this money from Gruppuso were it not for the issuance of the Bonds, because the WestRM transaction that was secured by the Bonds allowed Gruppuso to pay the Drummonds Insurance policy premiums and to obtain the $11

10

million insurance payout. Greenwich and XL proffer a February 21, 2002 letter from Gruppuso to Drummonds Insurance as evidence that Gruppuso received an $11 million payout under the Drummonds Insurance policy. Greenwich and XL also proffer an internal AIMCO email as evidence that, pursuant to a November 2001 indemnity agreement between AIMCO and Gruppuso, Gruppuso paid AIMCO $3.1 million on November 29, 2001, another $3.1 million on February 29, 2002, and another $350,000 in April 2002.

AIMCO responds that the January PFA document is not proof that AIMCO had any interest in the WestRM transaction because there is evidence that Baldwin did not execute the PFA. AIMCO proffers the irregular signature page of the purported PFA copy and Baldwin's testimony that he did not execute the PFA as evidence that Baldwin did not execute the PFA and that AIMCO was therefore not a party to the PFA transaction. AIMCO also disputes that it received any consideration from the WestRM transaction, but does not proffer any evidence to contradict the evidence proffered by Greenwich and XL that AIMCO received payments from Gruppuso under the November 2001 indemnity agreement. AIMCO argues that, because there is no evidence that Baldwin executed the PFA or that AIMCO received any consideration from the WestRM transaction, there can be no genuine factual dispute as to whether the Bonds were issued at AIMCO's request or on its behalf.

However, a reasonable jury could find that Baldwin executed the PFA because his signature appears on the last page of the document. A reasonable jury could conclude from this signature that the Bonds were issued at Baldwin's request. On the other hand, a reasonable jury could also find that AIMCO had no involvement in the transaction based on the evidence proffered by AIMCO that Baldwin did not execute the PFA. A reasonable jury could then conclude that the Bonds were issued neither at the request of nor on behalf of AIMCO. Based on the evidence proffered by both parties, there is a genuine issue of disputed fact as to whether the Bonds were issued "at the request of" or "on behalf of" AIMCO.

AIMCO responds that it is nonetheless entitled to summary judgment even if there is a genuine dispute as to whether the Bonds were issued "on behalf of" or "at the request of" AIMCO. AIMCO contends that the Indemnity Agreement is triggered in the first instance only by the existence of valid bonds and that the evidence here shows that the Bonds are invalid. AIMCO argues that the Bonds were void *ab initio* because Baldwin's signature on the Bonds was forged. As evidence of the forgery, AIMCO proffers an expert report that concludes that Baldwin did not sign the Bonds. Greenwich and XL have not proffered any evidence to the contrary.

In support of the argument that the forged signature renders the Bonds void *ab initio*, AIMCO cites several cases in which contracts were rendered void *ab initio* because one party's signature was forged. See <u>Opals on Ice Lingerie v. Body Lines Inc.</u>, 320 F.3d 362, 370 (2d Cir. 2003)("Bodylines and Opals agree that the signature of Sautter on the Karnick Agreement was 'cut and pasted'-in other words, that it is a forgery, not a genuine signature. 'Under [New York] State law and general contract law, a forged signature renders a contract void *ab initio.* Because there can be no meeting of the minds of the parties when a forgery has been perpetrated, no contract existed in the case at hand.'"); <u>Bangkok Crafts Corp. v. Capitolo Di San Pietro in Vaticano</u>, No. 03 Civ. 0015 (RWS), 2004 WL 1406076, at *6 (S.D.N.Y. June 23, 2004)("There are no probative facts adduced to dispute that the signatures of Noè and Bordin on the 2000 License are forged, thus rendering the contract void *ab initio*."); <u>Orlosky v. Empire Sec. Sys.</u>, 230 A.D.2d 401, 403 (3d Dep't 1997)(upholding lower court dismissal of claims for which a valid contract was a prerequisite because forged signature on contract rendered it "void *ab initio*").

However, AIMCO has not cited any authority or produced any evidence to show that the lack of a principal's signature on a bond has the same effect on the enforceability of that document as does the lack of a party's signature on a contract. See

Anixter, Inc. v. I.E.A. Elec. Group, Inc., 263 A.D.2d 412, 412 (1st Dep't 1999)("Summary judgment was properly granted on the subject payment bond, which is enforceable against defendant surety even though it may not have been signed by defendant contractor."); Castine v. N.Y. State Tax Comm'n, 447 N.Y.S.2d 119, 122 (Sup. Ct. 1982)("The court is aware that the bond contains lines for the petitioners' signatures and will therefore assume that the surety expected or even intended that they should sign. However it will not assume that the signatures were conditions precedent to surety becoming liable on the undertaking, especially since they could easily have incorporated that requirement in the printed form itself. The court therefore concludes that it was not necessary for the petitioners to have signed the instrument presented for filing."); Cubita v. Westchester Furniture Exch., 388 N.Y.S.2d 830, 832 (City Ct. 1976)("There is no doubt that the undertaking herein was properly executed and acknowledged by the surety company but the failure of the principal herein, to execute the bond did not affect the liability of the surety who has properly executed it."). There is furthermore no language in the Bonds or in the Indemnity Agreement that makes the principal's signature on the Bonds a condition precedent to Greenwich and XL becoming liable on the Bonds or to the Bonds being covered by the Indemnity Agreement. The forgery of Baldwin's signature on the Bonds therefore does

not entitle AIMCO to summary judgment on the indemnification claim. Both sides' motions for summary judgment on the contractual indemnification claim are denied.

## II. Claim for Indemnification Against Baldwin Defendants

The Baldwin Defendants also move for summary judgment on the claim of Greenwich and XL for contractual indemnification as set forth in Count IX of the Second Amended Complaint. Greenwich and XL do not articulate a theory of liability for their indemnification claim against these defendants, either in their Complaint or in their opposition to the Baldwin Defendants' motion for summary judgment. Indeed, Greenwich and XL appear to have abandoned this claim. Counsel for Greenwich and XL stated several times at oral argument on this motion that Greenwich and XL were not asserting a contractual indemnification claim against Baldwin based on the Indemnity Agreement. See 3/23/06 Hr'g Tr. at 44-45, 51, 59. Counsel then later corrected this assertion, but promised to "lay it out so that it is clear as to what exactly the claims are" in a letter submission to the court. Id. at 59-61. In this letter submission, counsel makes no mention of a contractual indemnification claim against the Baldwin Defendants.

However, even if Greenwich and XL were to assert such a claim, they have failed to show that there are any genuine issues of disputed fact that would prevent the Baldwin Defendants from prevailing on their motion for summary judgment. First, the settled rule in New York is that "[w]hen an agent makes a contract for a disclosed principal, it becomes neither a party to the contract nor liable for the performance of the contract. Accordingly, it is not liable if the contract is breached." Seguros Banvenez, S.A. v. S/S Oliver Drescher, 761 F.2d 855, 860 (2d Cir. 1985)(citing RESTATEMENT (SECOND) OF AGENCY §§ 320, 328). Although an agent might be held liable on a contract if he acted outside the scope of his agency in executing the contract, see id., neither Greenwich and XL nor Baldwin argue that Baldwin was not authorized to execute the Indemnity Agreement as AIMCO's agent. In addition, Swain & Baldwin do not appear anywhere in the contract and Greenwich and XL have articulated no basis upon which to require that Swain & Baldwin indemnify plaintiffs under the Indemnity Agreement. In short, Greenwich and XL have failed to proffer any evidence to show that a genuine issue of disputed fact exists as to whether the Baldwin Defendants were required to indemnify Greenwich and XL under the Indemnity Agreement. Summary judgment on the contractual indemnification claim is therefore granted in favor of the Baldwin Defendants.

III. Subrogation Claims Against AIMCO and the
Baldwin Defendants

AIMCO and the Baldwin Defendants move for summary judgment on the subrogation claims of Greenwich and XL as set forth in Counts XII and XIII of the Second Amended Complaint. Greenwich and XL argue that, because they made payment to WestRM under the Bonds after AIMCO's default, they are subrogated to WestRM's claims (1) against AIMCO and the Baldwin Defendants for fraud and (2) against AIMCO for breach of the PFA contract. See Pep'e v. McCarthy, 249 A.D.2d 286, 287 (2d Dep't 1998)("It is well settled that a surety paying on a bond at the behest of a creditor is entitled by operation of law to be subrogated to the rights and remedies available to the creditor for enforcement of the debtor's obligation.").

Baldwin's signature on the January PFA is the only evidence of any communication between the defendants and WestRM that has been proffered by Greenwich and XL in support of these subrogation claims. Greenwich and XL argue that Baldwin's signature on the PFA is sufficient to create a genuine issue of disputed fact as to whether AIMCO, through its agent Baldwin, executed the PFA and as to whether AIMCO was therefore a party to the contract and in communication with WestRM. Greenwich and XL also proffer Baldwin's testimony that the signature on the PFA looks like his signature and that Baldwin often signed stacks of

documents at Gruppuso's request, as evidence that Baldwin signed the PFA.

AIMCO responds that the purported copy of the January PFA is inadmissible under Fed. R. Evid. 1003 and it therefore cannot create a genuine issue of disputed fact as to whether AIMCO was involved in the PFA transaction. AIMCO contends that the copy of the PFA is inadmissible because: (1) Baldwin testified that he did not knowingly sign the document and that he had never seen it before the dispute arose; (2) AIMCO's expert has concluded that the signature page of the PFA cannot be authenticated; (3) an original PFA has never been produced; (4) there is no other evidence that AIMCO participated in the conceptualization, drafting or negotiation of the PFA. AIMCO's arguments, however, go to the weight of the evidence, not to its admissibility. The January PFA proffered by Greenwich and XL is sufficient to create a genuine issue of disputed fact as to whether or not Baldwin executed the PFA and as to whether or not AIMCO was a party to the PFA transaction. AIMCO's summary judgment motion is therefore denied as to the subrogation claim for breach of contract.

As for the subrogation claims for fraud against AIMCO and the Baldwin Defendants, Greenwich and XL have failed to proffer any evidence of any affirmative misrepresentations by AIMCO or the Baldwin Defendants that induced WestRM to enter into the PFA

transaction.  Greenwich and XL fail to explain how Baldwin's signature on the PFA, the only alleged statement by any of the defendants to WestRM, is an affirmative misrepresentation. Greenwich and XL further fail to explain why or proffer evidence to show that AIMCO or the Baldwin Defendants had any duty to disclose information to WestRM.  Finally, Greenwich and XL do not explain how WestRM reasonably or justifiably relied on any omissions or misrepresentations by AIMCO or the Baldwin Defendants, nor do they explain how that reliance caused harm to WestRM.  Summary judgment is therefore granted in favor of AIMCO and the Baldwin Defendants on the subrogation claims for fraud.

## IV. Fraud Claim Against AIMCO

AIMCO moves for summary judgment on the fraud claim of Greenwich and XL as set forth in Count II of the Second Amended Complaint.  AIMCO argues that there are no genuine issues of disputed fact as to whether AIMCO made any fraudulent misrepresentations or omissions to Greenwich and XL, or as to whether Greenwich and XL reasonably or justifiably relied on any misrepresentations or omissions by AIMCO, or as to whether the claimed losses of Greenwich and XL were caused by any misrepresentations or omissions by AIMCO.

Greenwich and XL allege that AIMCO made one affirmative misrepresentation and several actionable omissions.  The alleged

misrepresentation was made in connection with another transaction involving AIMCO, in which Greenwich and XL issued bonds to Cananwill, Inc. to secure the obligations of the bond principal, "Apartment Investment and Management Company / Real Estate Risk Management, LLC," under a Premium Finance Agreement with Cananwill (the "Cananwill PFA"). The Indemnity Agreement on which Greenwich and XL rely in support of their contractual indemnification claims against AIMCO and the Baldwin Defendants, was signed in connection with the Cananwill bond issuance. Greenwich and XL argue that AIMCO's general counsel, Miles Cortez, made an affirmative misrepresentation by executing a bond release for the Cananwill bonds. The release was an affirmative misrepresentation, Greenwich and XL contend, because by executing the bond release, Cortez represented to Greenwich and XL that the principal named on the released bonds, "Apartment Investment and Management Company / Real Estate Risk Management, LLC," was a real company.

Greenwich and XL also allege that AIMCO made fraudulent omissions because it was under a duty to disclose and failed to disclose (1) that "Apartment Investment Management Co./Real Estate Risk Management," was not a real company, (2) that AIMCO had given Gruppuso $10 million to pay off AIMCO's debt on the Cananwill PFA, but that Cananwill claimed it never received the money, (3) that Gruppuso had obtained two surety bonds from

Greenwich and XL to secure AIMCO's obligations under the Cananwill PFA and that both bonds listed the non-existent entity "Apartment Investment and Management Company/ Real Estate Risk Management LLC" as the Principal, (4) that AIMCO asked Gruppuso to sign an indemnity agreement on November 9, 2001 that required NPS to pay AIMCO over $700,000 and to indemnify AIMCO for any claims against AIMCO arising out of several insurance transactions in which NPS was involved, (5) that AIMCO requested a $25 million surety bond from Gruppuso to secure the November 2001 indemnity agreement, and (6) that AIMCO promised to pay Baldwin $200,000 if Gruppuso made good on the indemnity agreement.

In addition, Greenwich and XL argue that AIMCO was under a duty to disclose and failed to disclose its alleged superior knowledge of "ongoing fraudulent schemes in which AIMCO, Baldwin and Gruppuso were involved."  Greenwich and XL Opp. Memo at 31. The assumption implicit in the argument of Greenwich and XL is that AIMCO's superior knowledge of the fraudulent schemes may be inferred from the proffered evidence concerning NPS, the Cananwill PFA and the indemnity agreement between AIMCO and NPS. However, the evidence proffered does not give rise to a reasonable inference that AIMCO <u>knew</u> prior to the issuance of the Bonds that Gruppuso was engaging in fraud.  A jury could not reasonably infer from the proffered evidence that AIMCO had this

knowledge and could not therefore find that AIMCO had a duty to disclose it to Greenwich and XL.

Greenwich and XL further allege that "[h]ad Baldwin and AIMCO not made misrepresentations and had they disclosed their superior knowledge, [Greenwich and XL] would not have issued the bonds." Id. at 33. However, Greenwich and XL have proffered no evidence to show that they relied on the existence of an entity named "Apartment Investment and Management Company/Real Estate Risk Management, LLC" in deciding to issue the Bonds to AIMCO and NPS. Indeed, AIMCO has proffered the testimony of Scott Adams, the agent of Greenwich and XL, as evidence that Greenwich and XL relied only on the belief that the Indemnity Agreement covered the Bonds and on the fact that Robert Nicosia had requested the Bonds in deciding to issue the Bonds. Adams testified: "I was presented a request by the agent of AIMCO [Robert Nicosia] to guarantee an obligation, and AIMCO signed an indemnity agreement saying they would hold me harmless. I don't care what the hypothetical situation would have been. Give me a hundred, a thousand. If AIMCO said they're going to hold me harmless, that was the basis of my decision, period." Kelly-Najah Decl. Ex. 9 at 215-216. Nor do the circumstances surrounding the Bond issuance show why Greenwich and XL would have relied on the existence of this entity in deciding to issue the Bonds, as the

Bonds and January PFA bore no mention of this entity or of Real Estate Risk Management, LLC.

Furthermore, the circumstances of the Bond issuance do not show why Greenwich and XL would have relied on the non-existence of an indemnity agreement between AIMCO and Gruppuso, on the non-existence of the indemnity-related transactions, or on Cananwill's receipt of the $10 million payment from Gruppuso, in order to reach their decision to issue the Bonds. In light of Adams' testimony and the failure of Greenwich and XL to proffer any evidence to create a genuine issue of disputed fact as to whether they reasonably relied on AIMCO's alleged misrepresentation and omissions, summary judgment on this claim is granted for AIMCO.

### V. Fraud Claim Against Ray Baldwin

Baldwin moves for summary judgment on the fraud claim of Greenwich and XL as set forth in Count II of the Second Amended Complaint. Baldwin argues that there are no genuine issues of disputed fact as to whether he made any fraudulent misrepresentations or omissions to Greenwich and XL, or as to whether Greenwich and XL reasonably or justifiably relied on any alleged misrepresentations or omissions by him, or as to whether the claimed losses of Greenwich and XL were caused by the alleged misrepresentations or omissions.

As in their fraud claim against AIMCO, Greenwich and XL argue that Baldwin committed fraud by making an affirmative misrepresentation and several actionable omissions. Greenwich and XL contend that, by signing the Indemnity Agreement that listed "Apartment Investment and Management Company/Real Estate Risk Management, LLC" as the principal, Baldwin misrepresented that this entity was a real company that had a legitimate relationship to AIMCO. However, Greenwich and XL must also proffer evidence that they reasonably or justifiably relied on Baldwin's alleged misrepresentation in deciding to issue the Bonds. As discussed in Part IV, <u>supra</u>, Greenwich and XL fail to show that there is a genuine issue of disputed fact as to whether they reasonably or justifiably relied on the existence of "Apartment Investment and Management Company/Real Estate Risk Management, LLC" in deciding to issue the Bonds.

Greenwich and XL also argue that Baldwin committed fraud by failing to disclose information about which Baldwin had superior knowledge. Greenwich and XL contend that Baldwin was under a duty to disclose, and failed to disclose, that (1) "Apartment Investment Management Co./Real Estate Risk Management," was not a real company, (2) that AIMCO asked Gruppuso to sign an indemnity agreement on November 9, 2001, (3) that AIMCO requested a $25 million surety bond to secure the indemnity agreement, and (4) that AIMCO promised to pay Baldwin $200,000 if Gruppuso made good

on the indemnity agreement.  Greenwich and XL also implicitly
argue that the proffered evidence gives rise to a reasonable
inference that Baldwin knew prior to the issuance of the Bonds
that Gruppuso was engaging in fraud.

However, Greenwich and XL fail to show that there is a
genuine issue of disputed fact as to whether Baldwin owed them a
duty to disclose any of the aforementioned information.  In
general, a duty to disclose based on "superior knowledge" only
arises between two parties to a business transaction.  See Brass
v. Am. Film Techn., Inc., 987 F.2d 142, 150 (2d Cir. 1993).
Greenwich and XL do not dispute that Baldwin was not a party to
the Bonds transaction.  Rather, they argue that a third-party to
a transaction, such as Baldwin, may still be under a duty to
disclose certain information about the transaction to the fraud
victim based on the third-party's "superior knowledge" of
material facts relating to the transaction.  See Stevenson
Equip., Inc. v. Chemig Const. Corp., 170 A.D.2d 769, 771 (3d
Dep't 1991).  However, such a third-party duty to disclose has
only been found where the third-party to the transaction has had
some direct communication with the fraud victim regarding the
fraudulent transaction.  See id. at 770-71 (upholding finding of
fraud against third party to a transaction when third-party (1)
showed fraud victim goods being sold by fraud perpetrator, (2)
was aware that victim was buying stolen goods, and (3) did not

tell fraud victim that goods were stolen property).  In this
case, Greenwich and XL have proffered no evidence to show that
they had any communication with Baldwin regarding the Bonds such
as to give rise to a duty to disclose based on superior
knowledge.  Therefore, summary judgment on the fraud claim is
granted in favor of Baldwin.

VI.Aiding and Abetting Fraud Claim Against AIMCO

AIMCO moves for summary judgment on the claim of Greenwich
and XL for aiding and abetting fraud as set forth in Count V of
the Second Amended Complaint.  "The essential elements of aiding
and abetting fraud under New York law are: (1) the existence of a
fraud; (2) a defendant's knowledge of the fraud; and (3) that the
defendant provided substantial assistance to advance the fraud's
commission."  Filler v. Hanvit Bank, 01 Civ. 9510(MGC), 2003 WL
22110773, at *2 (S.D.N.Y. Sept. 12, 2003).  AIMCO argues that
there are no genuine issues of disputed fact as to whether AIMCO
knew of the alleged fraud by Gruppuso, NPS, and Baldwin or as to
whether AIMCO provided substantial assistance to that fraud.

Greenwich and XL allege that Gruppuso, NPS and Baldwin were
engaged in a scheme to defraud Greenwich and XL by concealing
that the WestRM transaction was actually a loan and not an
insurance program and by obtaining surety bonds from Greenwich
and XL to transfer their liability for their loan repayment

obligations to Greenwich and XL.  Greenwich and XL argue that
AIMCO provided substantial assistance to the underlying fraud by
failing to disclose that "Apartment Investment and Management
Company/Real Estate Risk Management, LLC," was not a real
company.  However, as discussed in Part IV, supra, Greenwich and
XL have proffered no evidence to show that they relied on the
existence of an entity named "Apartment Investment and Management
Company/Real Estate Risk Management, LLC" in deciding to issue
the Bonds to AIMCO and NPS.

Greenwich and XL further contend that AIMCO provided
substantial assistance to the fraud by inducing Gruppuso to
continue and to expand his fraudulent schemes.  As evidence of
this inducement, Greenwich and XL proffer a letter from AIMCO,
dated October 23, 2001, in which AIMCO requested that Gruppuso
agree to indemnify AIMCO for any claims arising under several
insurance policies in exchange for AIMCO's agreement not to
pursue any claims regarding the National Union policy.  Greenwich
and XL argue that Gruppuso undertook the fraud against Greenwich
and XL in order to raise funds to satisfy his indemnification
obligations to AIMCO.  Greenwich and XL also proffer evidence
that AIMCO's counsel executed a bond release to Greenwich and XL
that, they argue, induced Greenwich and XL to issue the Bonds.

However, although AIMCO's request for indemnification from
Gruppuso and AIMCO's execution of the bond release were arguably

"but for" causes of Gruppuso's alleged fraud, they were not a proximate cause of the harm to Greenwich and XL in this case. To allege "substantial assistance" by an aider and abettor, "the complaint must allege that the acts of the aider and abettor proximately caused the harm to the plaintiff on which the primary liability is predicated. Allegations of a 'but for' causal relationship are insufficient. Aider and abettor liability will not attach where the injury was not a direct or reasonably foreseeable result of the defendant's conduct." Id. at *2 (internal citations, brackets and quotations omitted). Greenwich and XL have failed to proffer any evidence to show that their losses on the Bonds were a reasonably foreseeable result of AIMCO's execution of the bond release or of AIMCO's request for indemnification from Gruppuso. AIMCO's motion for summary judgment on this claim is therefore granted.

### VII. Civil Conspiracy Claim Against AIMCO

AIMCO and the Baldwin Defendants move for summary judgment on the claim of Greenwich and XL for civil conspiracy as set forth in Count IV of the Second Amended Complaint. "In alleging conspiracy, the plaintiff carries the burden of proving (1) the corrupt agreement between two or more persons, (2) an overt act, (3) their intentional participation in the furtherance of a plan or purpose, and (4) the resulting damage." Kashi v. Gratsos, 790

F.2d 1050, 1055 (2d Cir. 1986).  In the Complaint, Greenwich and

XL allege that AIMCO, the Baldwin Defendants, NPS, Gruppuso, and

two insurance brokers, Pilgrim Organization and Pilgrim Agency

("the Pilgrim Defendants"), entered into a corrupt agreement to

defraud several insurance, financing and surety companies,

including Greenwich and XL.[2]

AIMCO and the Baldwin Defendants argue that they are

entitled to summary judgment on this claim because there are no

genuine issues of disputed fact as to whether there is a viable

underlying claim for fraud against one of the coconspirators.  A

claim for civil conspiracy to commit fraud is not an independent

cause of action under New York law, but rather is a means to hold

coconspirators liable for one another's fraud.  Therefore, if

Greenwich and XL have no viable underlying claim for fraud

against one of the coconspirators, their civil conspiracy claim

must also fail.  See Linden v. Lloyd's Planning Serv., Inc., 299

A.D.2d 217, 218 (1st Dep't 2002).  As discussed in Parts IV and

V, supra, Greenwich and XL have not proffered sufficient evidence

in support of their fraud claims against Baldwin and AIMCO to

survive summary judgment.  Greenwich and XL must therefore

proffer sufficient evidence to support their fraud claim against

---

[2] Despite these allegations in the Complaint, Greenwich and XL proffer no
evidence to show that the Pilgrim Defendants were a party to a corrupt
agreement between AIMCO, Gruppuso, NPS and the Baldwin Defendants.  Indeed,
Greenwich and XL do not mention the Pilgrim Defendants' involvement in the
alleged civil conspiracy in their opposition to the summary judgment motions.

NPS and Gruppuso in order to defeat defendants' motion for summary judgment on the civil conspiracy claim.

In Count I of the Second Amended Complaint, Greenwich and XL allege that Gruppuso and NPS committed fraud by concealing information about which Gruppuso and NPS had "superior knowledge." Greenwich and XL allege that Gruppuso and NPS were under a duty to disclose, and failed to disclose, (1) that "Apartment Investment Management Co./Real Estate Risk Management" was not a real company, (2) that Baldwin and Gruppuso had engaged in a series of fraudulent insurance transactions prior to the WestRM transaction, (3) that AIMCO demanded that Gruppuso and NPS indemnify it in October 2000, (4) that AIMCO asked Gruppuso to sign an indemnity agreement on November 9, 2001 that required NPS to pay AIMCO over $700,000 plus additional money owed on various insurance policies, and (5) that the WestRM transactions were "designed to put money into Gruppuso's hands to satisfy NPS's obligations to AIMCO under the October 2000 and the November 2001 Indemnity Agreement." Complaint ¶ 199.

However, to prevail on their fraud claim, Greenwich and XL must also show that they reasonably relied on defendants' failure to disclose any of this information. Greenwich and XL do not proffer any evidence to support their conclusory statement in the Complaint that they "justifiably relied on Gruppuso and NPS's fraudulent omissions and representations when they issued the NPS

and AIMCO/NPS Bonds." Complaint ¶ 201. To the contrary, the testimony of Scott Adams, the agent of Greenwich and XL, is evidence that Greenwich and XL relied only on the belief that the Indemnity Agreement covered the Bonds and on the fact that Robert Nicosia had requested the Bonds in order to reach their decision to issue the Bonds. Adams testified: "I was presented a request by the agent of AIMCO [Robert Nicosia] to guarantee an obligation, and AIMCO signed an indemnity agreement saying they would hold me harmless. I don't care what the hypothetical situation would have been. Give me a hundred, a thousand. If AIMCO said they're going to hold me harmless, that was the basis of my decision, period." Kelly-Najah Decl. Ex. 9 at 215-216. Nor does the proffered evidence showing the circumstances surrounding the Bonds transaction give rise to an inference that Greenwich and XL reasonably relied on defendants' failure to disclose this information. As a result of the failure of Greenwich and XL to proffer sufficient evidence to support their underlying fraud claims against NPS and Gruppuso, summary judgment is granted to AIMCO and the Baldwin Defendants on the civil conspiracy claim.

VIII. Negligent Supervision Claim Against AIMCO

AIMCO moves for summary judgment on the claim of Greenwich and XL for negligent supervision as set forth in Count VI of the

Second Amended Complaint. AIMCO argues that there are no genuine issues of disputed fact as to whether AIMCO's supervision of Baldwin caused harm to Greenwich and XL or as to whether Gruppuso was the agent of Greenwich and XL. In their opposition to summary judgment, Greenwich and XL do not discuss their negligent supervision claim based on Gruppuso's conduct and proffer no evidence to show that Gruppuso was AIMCO's agent. Summary judgment is therefore granted to AIMCO on the claim against it for negligent supervision of Gruppuso.

To state a claim for negligent supervision or retention, a plaintiff must show "the standard elements of negligence" as well as that "the tort-feasor and the defendant were in an employee-employer relationship." Ehrens v. Lutheran Church, 385 F.3d 232, 235 (2d Cir. 2004). Causation is one of the "standard elements of negligence." RESTATEMENT (SECOND) OF TORTS § 281. In order to support their negligent supervision claim against AIMCO, Greenwich and XL must therefore proffer some evidence to show that Baldwin committed a tort and that AIMCO's negligent supervision of Baldwin caused harm to Greenwich and XL in this case. In their Complaint, Greenwich and XL do not clearly allege what tortious conduct by Baldwin forms the basis for the negligent supervision claim. It appears, however, from the opposition of Greenwich and XL to the motion that Baldwin's alleged execution of the January PFA was the tortious act by

32

Baldwin that allegedly caused harm to Greenwich and XL. Yet,
Greenwich and XL do not explain why this act was tortious or how
it caused them harm. In light of the failure of Greenwich and XL
to proffer any evidence that Baldwin committed a tortious act
that caused injury to them, summary judgment is granted in favor
of AIMCO.

IX.Unjust Enrichment Claim Against AIMCO

AIMCO moves for summary judgment on the claim of Greenwich
and XL for unjust enrichment as set forth in Count XI of the
Second Amended Complaint. AIMCO argues that there are no genuine
issues of disputed fact as to whether AIMCO was unjustly enriched
at the expense of Greenwich and XL. To state a claim for unjust
enrichment under New York law, a plaintiff must show "that (1)
defendant was enriched, (2) at plaintiff's expense, and (3)
equity and good conscience militate against permitting defendant
to retain what plaintiff is seeking to recover." <u>Briarpatch Ltd.
v. Phoenix Pictures, Inc.</u>, 373 F.3d 296, 306 (2d Cir. 2004).

Greenwich and XL proffer the January PFA as evidence that
AIMCO was enriched at the expense of Greenwich and XL through the
WestRM transaction that the Bonds secured. The PFA states that
"AIMCO will benefit from the [Drummonds Insurance] Policy
pursuant to its agreement with NPS." Escobar Decl. Ex. 3.
Greenwich and XL argue that the referenced "agreement" between

AIMCO and NPS is an indemnity agreement from November 2001, in which NPS agreed to indemnify AIMCO against claims from AFCO, Cananwill and others, and to pay AIMCO $700,984 plus an additional sum of up to $10 million, to compensate AIMCO for premium payments made to National Union Fire Insurance. Greenwich and XL then proffer a February 21, 2002 letter from Gruppuso to Drummonds Insurance as evidence that Gruppuso received an $11 million payment under the Drummonds insurance policy.  Greenwich and XL also proffer an internal AIMCO email as evidence that Gruppuso paid AIMCO $3.1 million on November 29, 2001, another $3.1 million on February 29, 2002, and another $350,000 in April, 2002.

Greenwich and XL argue that equity and good conscience militate against permitting AIMCO to retain these funds. Greenwich and XL argue that AIMCO received this money as a result of Gruppuso's entering into and then breaching various premium finance agreements with WestRM.  As a result of Gruppuso's misuse of these funds, Greenwich and XL were then required to pay off the liability of AIMCO and Gruppuso to WestRM under the PFAs. Equity thus militates against allowing AIMCO to retain these funds, which are the fruit of contractual breaches.  In addition, Greenwich and XL proffer evidence that AIMCO was aware (1) that Baldwin and Gruppuso had executed transactions in the name of a non-existent company "Apartment Investment Management Co./Real

Estate Risk Management," (2) that Gruppuso had been paid $10 million by AIMCO to pay off the another PFA, but the insurer claimed it never received the money, and (3) that Gruppuso had obtained two surety bonds from Greenwich and XL to secure AIMCO's obligations under another PFA and that both bonds listed the non-existent entity "Apartment Investment and Management Company/ Real Estate Risk Management LLC" as the Principal. Although this evidence was insufficient to support the fraud claim of Greenwich and XL against AIMCO, plaintiffs here are not required to show that AIMCO engaged in wrongful conduct, but rather need only show that the circumstances of the transactions are such that equity and good conscience militate against permitting AIMCO to retain these funds. See Blusal Meats, Inc. v. United States, 638 F. Supp. 824, 831 (S.D.N.Y. 1986)(noting that "[p]roof of wrongful conduct by the defendant is not required" to support a claim for unjust enrichment).

Greenwich and XL have thus proffered sufficient evidence to create a genuine issue of disputed fact as whether AIMCO was enriched at the expense of Greenwich and XL, and as to whether "equity and good conscience" militate against permitting AIMCO to retain the payments it received from Gruppuso. AIMCO's summary judgment motion on this claim is therefore denied.

                    X.Unjust Enrichment Claim Against Baldwin
                                Defendants

The Baldwin Defendants move for summary judgment on the claim of Greenwich and XL for unjust enrichment as set forth in Count XI of the Second Amended Complaint.  The Baldwin Defendants argue that there are no genuine issues of disputed fact as to whether they were unjustly enriched at the expense of Greenwich and XL.  In response, Greenwich and XL have proffered no evidence that the Baldwin Defendants were enriched at the expense of Greenwich and XL through the WestRM transaction that the Bonds secured.  Summary judgment on this claim is therefore granted in favor of the Baldwin Defendants.

CONCLUSION

For the foregoing reasons, the motion of Greenwich and XL for summary judgment is denied and the Baldwin Defendants' motion for summary judgment is granted.  AIMCO's motion for summary judgment is granted as to the subrogation claim for fraud and claims for fraud, civil conspiracy, negligent supervision, and aiding and abetting fraud.  AIMCO's motion is denied as to the subrogation claim for breach of contract and claims for contractual indemnification and unjust enrichment.

SO ORDERED.

Dated:    New York, New York
          July 19, 2006

S/ _____
     MIRIAM GOLDMAN CEDARBAUM
    United States District Judge